UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE SLOMINSKI,

        Plaintiff,                                    Hon. Ellen S. Carmody

v.

                                                                 Case No. 1:10-cv-1295

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On April 12, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years old at the time of the ALJ's decision. (Tr. 55, 98). She successfully completed high school and worked previously as a bottling line attendant, teacher's aide, fruit sorter, greeter, housekeeping aide, office assistant, and home health aide. (Tr. 54, 125).

Plaintiff applied for benefits on February 28, 2007, alleging that she had been disabled since July 1, 2006, due to left arm problems, back pain, and shoulder pain. (Tr. 98-108, 124; Dkt. # 15 at 6). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 56-97). On April 30, 2009, Plaintiff appeared before ALJ Thomas Tielens, with testimony being offered by Plaintiff and vocational expert, Malcolm Brodzinsky. (Tr. 6-37). In a written decision dated June 22, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 46-55). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff has since been approved to receive disability benefits pursuant to a later application which appears to have considered evidence obtained after the date of the decision presently being challenged. (Dkt. #15). This latter determination found that Plaintiff was disabled

beginning June 20, 2009. Thus, the present appeals seeks only a closed period of benefits from July 1, 2006, through June 20, 2009.

## **RELEVANT MEDICAL HISTORY**

X-rays of Plaintiff's thoracic spine, taken on August 31, 2005, revealed "moderate to severe multilevel degenerative disc disease." (Tr. 192). X-rays of Plaintiff's lumbar spine, taken the same day, revealed "moderate to severe degenerative disc disease, L4-L5 and L5-S1 levels." (Tr. 191). X-rays of Plaintiff's cervical spine, also taken the same day, were "normal." (Tr. 190).

On December 13, 2005, Plaintiff participated in an MRI examination of her cervical spine the results of which revealed "mild degenerative disc disease and mild spondylitic change involving the cervical spine[, but] no focal disc herniations are seen [and] there is no evidence of central canal or neuroforaminal stenosis." (Tr. 189).

On December 19, 2005, Plaintiff was examined by Dr. John Visser. (Tr. 160). Plaintiff reported that she was experiencing "increasing pain and numbness in her left upper extremity which is now involving the right as well." (Tr. 160). Plaintiff exhibited "markedly diminished" range of motion in her left shoulder, but there was no evidence of focal atrophy or fasciculations. (Tr. 160). Strength testing in Plaintiff's upper extremities revealed "relatively good strength except that limited by pain." (Tr. 160 ). The results of an electroneuromyography examination revealed "evidence of very mild slowing of median nerve conduction velocity across the right wrist," but there was "no evidence of left median neuropathy or ulnar neuropathy." (Tr. 162). Dr. Visser concluded that Plaintiff was experiencing "mild carpal tunnel syndrome on the right" and was "possib[ly]" experiencing "capsulitis or frozen shoulder" on the left. (Tr. 160). The

doctor concluded that "further evaluation by orthopedics would be advisable." (Tr. 160).

On March 21, 2006, Plaintiff participated in an MRI examination of her left shoulder the results of which revealed: (1) partial thickness tear of the rotator cuff tendon; (2) impingement; (3) moderate degenerative changes of the acromioclavicular and glenohumeral joints; and (4) degenerative and/or post traumatic signal change of the glenoid labral cartilage. (Tr. 222). On May 23, 2006, Plaintiff underwent a "mini ablation" procedure on her left shoulder performed by Dr. P. Kevin Gerth. (Tr. 250).

On July 1, 2006, Plaintiff participated in a consultive examination conducted by Allison Bush, M.S. and Dennis Mulder, Ed.D. (Tr. 201-04). Plaintiff reported that she was disabled as a result of "a frozen left shoulder and depression." (Tr. 201). With respect to her daily activities, Plaintiff reported that she cleans her house, washes laundry, shops for groceries, prepares meals, "helps out with the kids," washes dishes, and takes walks. (Tr. 202-03). Plaintiff "was tearful throughout much of this evaluation," but the results of a mental status examination were otherwise unremarkable. (Tr. 203-04). Plaintiff was diagnosed with major depressive disorder and dependent personality disorder traits. (Tr. 204). Plaintiff's GAF score was rated at 48-50.[1] (Tr. 204).

X-rays of Plaintiff's left shoulder, taken on October 26, 2006, were "normal" with no evidence of fracture, dislocation, soft tissue abnormality, or other osseous abnormality. (Tr. 234). X-rays of Plaintiff's cervical spine, taken the same day, were "normal." (Tr. 233). On November 20, 2006, Plaintiff participated in an MRI examination of her cervical spine the results of which revealed the following: (1) stenosis at C3-C4; (2) mild disc protrusion and stenosis at C5-C6; and

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 48-50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

(3) mild to moderate disc protrusion at C7-T1. (Tr. 220). On November 28, 2006, Plaintiff participated in an MRI examination of her brain the results of which were "normal." (Tr. 231).

On January 24, 2007, Plaintiff was examined by Dr. Gary Gurden. (Tr. 225-26). Plaintiff reported that she was experiencing constant pain in her neck, shoulders and arms which is exacerbated by "any type of activity." (Tr. 225). Plaintiff "act[ed] very painful," but "individual manual muscle testing of her upper and lower extremities reveal[ed] no deficits." (Tr. 225). Babinski testing[2] was negative and Plaintiff exhibited "no cranial nerve abnormalities." (Tr. 225). Dr. Gurden concluded that, "I am not sure I believe the severity of this woman's pain." (Tr. 225).

On November 27, 2007, Plaintiff participated in an MRI examination of her brain the results of which were "negative." (Tr. 295). An MRI of Plaintiff's cervical spine, performed the same day, revealed "small" protrusions of disc material at C5-C6, C6-C7, and C7-T1. (Tr. 296). There was, however, no evidence of central canal stenosis or cord compression. (Tr. 296).

On January 31, 2008, Plaintiff participated in an echocardiograph examination the results of which revealed "very mild mitral insufficiency [but] otherwise normal echocardiogram." (Tr.312). X-rays of Plaintiff's chest, taken on April 23, 2008, were "normal." (Tr. 311).

On April 30, 2008, Dr. Gerth reported that "at this point [Plaintiff] is unable to use her left shoulder for gainful employment," although "one handed work would be permissible." (Tr. 297). On July 18, 2008, Plaintiff underwent arthroscopic surgery on her left shoulder performed by Dr. Gerth. (Tr. 403).

Treatment notes dated September 3, 2008, indicate that Plaintiff's mood was "stable" and that "her racing thoughts have diminished" with medication. (Tr. 346). It was also noted that

---

[2] Babinski test is a neurological test designed to discern damage to the central nervous system. *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on February 27, 2012).

Plaintiff's "affect is brighter" and that "her appetite is improving." (Tr. 346). On September 9, 2008, Dr. Eric Weaver reported that "at the current time, I feel it is unlikely that [Plaintiff] would be able to do regular gainful employment to any extent." (Tr. 298).

Treatment notes dated September 10, 2008 indicate that Plaintiff was not taking all of her medications as prescribed. (Tr. 344). Treatment notes dated September 29, 2008, indicate that Plaintiff "stopped her medicine." (Tr. 396). Treatment notes dated October 16, 2008, indicate that Plaintiff resumed taking her medication and that she now only feels "a little depressed." (Tr. 392). It was further observed that Plaintiff was "smiling" and "pleasant." (Tr. 392). Treatment notes dated December 1, 2008, indicate that "overall [Plaintiff] is doing fairly well." (Tr. 388).

On December 5, 2008, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed "severe degenerative disc disease at the L4-L5 level," but otherwise there was "no evidence of disc herniation, central canal stenosis or neural foramina encroachment." (Tr. 349).

On January 21, 2009, Dr. Weaver noted that Plaintiff had recently failed to attend two scheduled appointments without giving "proper notice of cancellation." (Tr. 330). On January 22, 2009, Dr. Weaver again authored a letter in which he concluded that "at this time I feel it is unlikely that [Plaintiff] would be unable to do regular gainful employment to any extent." (Tr. 299).

Treatment notes dated February 4, 2009, reveal that Plaintiff, yet again, discontinued taking her depression medication and as a result appeared "tearful and depressed." (Tr. 385). Treatment notes dated February 26, 2009, indicate that Plaintiff had resumed taking depression medication. (Tr. 383).

At the Administrative Hearing, Plaintiff testified that she is "hurt and depressed all

7

the time." (Tr. 21). Plaintiff also testified that she occasionally experienced migraine headaches, but that medication generally helped. (Tr. 23). Plaintiff testified, however, that "about twice a week" her headaches were so severe that she has to lay down in a dark room. (Tr. 24). Plaintiff also testified that she was experiencing fibromyalgia for which she was presently receiving treatment. (Tr. 23).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) left shoulder rotator cuff tear with impingement, status post May 2006 mini ablation for adhesive capsulitis and July 2008 arthroscopic acromioplasty; (2) degenerative disc disease of the lumbar spine and cervical spine; and (3) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 48-50).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) she can only occasionally climb, stoop, kneel, crouch, or crawl; (2) she can only occasionally reach overhead; and (3) she can perform only simple, repetitive tasks. (Tr. 50). The ALJ, based on testimony from a vocational expert, found that Plaintiff retained the ability to perform her past relevant work as a bottling line attendant, fruit sorter, and greeter. (Tr. 54). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

a.  The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ failed to accord controlling weight to opinions expressed by two of her treating physicians. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion,

(4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

        1.     Dr. Weaver

Plaintiff asserts that because Dr. Weaver was her treating physician, the ALJ was required to afford controlling weight to his opinion. Plaintiff has failed, however, to identify the opinion in question or articulate the alleged shortcoming in the ALJ's assessment thereof. Instead, Plaintiff merely asserts the conclusion that the ALJ failed to accord sufficient weight to Dr. Weaver's opinion. While the Court can perhaps surmise from the ALJ's decision the opinion to which Plaintiff's argument is directed, such does not relieve Plaintiff of the affirmative obligation to more clearly articulate the basis for her claims of error. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same). In light of Plaintiff's failure to sufficiently develop this argument, the Court finds that such has been waived. Even were the Court to overlook Plaintiff's failure in this regard, however, the result would be the same.

On September 8, 2008, Dr. Weaver asserted that as a result of Plaintiff's fibromyalgia, depression, and eating disorder, "it is unlikely that [Plaintiff] would be able to do regular gainful employment to any extent." (Tr. 298). On January 22, 2009, Dr. Weaver reiterated this particular opinion. (Tr. 299). The ALJ gave less than controlling weight to Dr. Weaver's opinion noting that Plaintiff's fibromyalgia "did not involve aggressive medical attention" and, furthermore, that her eating disorder and depression improved with treatment. (Tr. 53). This rationale is sound and supported by substantial evidence.

The Court, moreover, discerns other reasons why this particular opinion is not worthy of controlling weight. The opinion that Plaintiff is *unlikely* to be able to work is incredibly vague and does not necessarily indicate that Plaintiff cannot work, only that she might not be able to work. Furthermore, the doctor fails to articulate any specific functional limitation which is inconsistent with the ALJ's RFC determination, but instead asserts the conclusion that Plaintiff is (or might be) disabled. However, the determination of whether a claimant is disabled is a matter reserved to the Commissioner and the ALJ is not obligated to afford any special deference to such. *See* 20 C.F.R. § 404.1527(e)(1).

2. Dr. Gerth

Plaintiff asserts that because Dr. Gerth was her treating physician, the ALJ was required to afford controlling weight to his opinion. Again, Plaintiff has failed to identify the opinion in question or articulate the alleged shortcoming in the ALJ's assessment thereof. Instead, Plaintiff merely asserts the conclusion that the ALJ failed to accord sufficient weight to Dr. Gerth's opinion. Considering Plaintiff's failure to sufficiently develop this argument, the Court finds, for

12

the same reasons discussed above, that such has been waived. Even were the Court to overlook Plaintiff's failure in this regard, however, the result would be the same.

On April 30, 2008, Dr. Gerth opined that "at this point [Plaintiff] is unable to use her left shoulder for gainful employment." (Tr. 297). As the ALJ recognized, however, this particular opinion was offered prior to Plaintiff's July 2008 arthroscopic shoulder surgery. (Tr. 52). As the ALJ observed, "since the surgery, there is minimal evidence of persistent and severe symptoms or limitations requiring ongoing medical attention to support Dr. Gerth's opinion." (Tr. 52). Again, the ALJ's rationale is sound and supported by substantial evidence.

Dr. Gerth's opinion also suffers from additional shortcomings. The doctor's opinion is rather vague. To the extent that the doctor's opinion is interpreted as asserting that Plaintiff is unable to perform any activity with her shoulder, such is not supported by the record. To the extent that the doctor's opinion is instead interpreted as asserting that there are certain activities which Plaintiff cannot perform with her left shoulder, the doctor has failed to describe such with any particularity. Finally, to the extent that Dr. Gerth's opinion is interpreted as asserting that Plaintiff is simply unable to work such is entitled to no deference as it concerns a matter which is left exclusively to the Commissioner to determine. Accordingly, the Court finds that substantial evidence supports the ALJ's decision to afford less than controlling weight to the opinions expressed by Dr. Weaver and Dr. Gerth.

     b.  The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff also asserts that the ALJ failed to accord sufficient weight to her subjective allegations. Plaintiff fails to identify any specific or particular allegation that the ALJ failed to properly evaluate or assess. Instead, Plaintiff has simply included in her brief a single paragraph (preceded by the heading "Credibility") in which she appears to assert that because one particular examiner failed to specifically find Plaintiff less than credible, the ALJ's decision to afford less than controlling weight to her subjective allegations is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

Plaintiff's failure to sufficiently develop this argument is, by itself, a sufficient basis for rejecting such. Notwithstanding this shortcoming, the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence. As the ALJ determined, the medical evidence is consistent with the conclusion that Plaintiff can perform a limited range of light work. (Tr. 53-54). The ALJ observed that when Plaintiff actually took her medication as prescribed she responded favorably to treatment. As the ALJ further observed, Plaintiff's failure to take her medications as prescribed

15

suggests that her impairments or symptoms were not as debilitating as alleged. Finally, as discussed above, Dr. Gurden reported that the results of his examination of Plaintiff were inconsistent with Plaintiff's subjective allegations. In sum, the ALJ's decision to afford less than controlling weight to Plaintiff's subjective allegations is supported by substantial evidence. *See Norris v. Commissioner of Social Security*, 2012 WL 372986 at *4-5 (6th Cir., Feb. 7, 2012) (where the ALJ "did not misconstrue facts in the record or overlook other significant evidence. . .and identified specific facts supported by the record" which to "a reasonable mind" would "cast doubt on" a claimant's subjective allegations, the ALJ's decision to discount the claimant's credibility is not in error).

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date: March 12, 2012                                   /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge